The INDIANA DEPARTMENT OF TRANSPORTATION and Cristine M. Klika, in Her Official Capacity as Commissioner of the Indiana Department of Transportation, Appellants–Defendants/Counterclaim–Plaintiffs,

v.

William J. McENERY and Len McEnery, Appellees–Third Party Counterclaim–Defendants.

No. 71A04–0007–CV–280.

Court of Appeals of Indiana.

Oct. 23, 2000.

Forrest Bowman, Jr., Bowman, Cosby & Bowman, Indianapolis, Indiana, Carmen M. Piasecki, Nickle & Piasecki, South Bend, Indiana, Attorneys for Appellants.

Wendell W. Walsh, Robert J. Palmer, May, Oberfell & Lorber, South Bend, Indiana, Duane M. Kelley, W. Gordon Dobie, Winston & Strawn, Chicago, Illinois, Attorneys for Appellees.

## OPINION

RILEY, Judge

### STATEMENT OF THE CASE

Appellants–Defendants/Counterclaim–Plaintiffs, Indiana Department of Transportation and Cristine M. Klika, in her official capacity as Commissioner of the Indiana Department of Transportation (collectively referred to as "INDOT"), appeals the trial court's grant of summary judgment in favor of Appellees–Third–Party Counterclaim–Defendants, William J. McEnery and Len McEnery (hereinafter collectively referred to as "the McEnerys").

We affirm.

### ISSUE

INDOT raises one issue on appeal: whether the trial court committed reversible error in granting the McEnerys' motion for summary judgment on INDOT's wrongful detention of real estate claim.

### FACTS AND PROCEDURAL HISTORY

The facts relevant to our disposition are as follows. INDOT is an instrumentality of the State of Indiana. Ind.Code § 8–23–2–1 et seq. INDOT operates the Indiana Toll Road pursuant to a lease with the Indiana Transportation Finance Authority.

On May 2, 1995, Gas City, Ltd. (Gas City) and INDOT entered into a ten-year written agreement in which Gas City would operate ten service area plazas on the Indiana Toll Road. In a letter dated February 18, 1998, INDOT informed Gas City that their agreement was terminated for cause. INDOT stated that Gas City's method of determining fuel prices constituted a non-compliance with the terms of the agreement and was a basis for termi-

nation. The letter further stated that termination would be effective at 11:59 p.m. on April 30, 1998. In a letter dated March 19, 1998, Gas City responded to INDOT's termination of the agreement by stating:

1) We are aware that INDOT is soliciting bids for the operation of the ten service stations along the Indiana Toll Road and that the bid proposals contemplate a takeover effective May 1, 1998. Gas City has a valid and enforceable lease with an initial term not expiring until April 30, 2005. If INDOT enters into a lease as contemplated by its current bid proposal it does so at its financial peril...

(R. 535). Gas City has continued to operate the service stations past the effective date INDOT terminated the agreement for cause.

On February 19, 1998, Gas City filed a complaint for specific performance, declaratory relief, and alternatively, damages. On April 7, 1998, INDOT filed an answer and a counterclaim seeking declaratory judgment, a permanent injunction, and damages. On April 7, 1998, INDOT also filed its Verified Emergency Petition for Preliminary Injunction. The trial court held a hearing on INDOT's Petition for Preliminary Injunction on April 23, 1998. At the conclusion of the hearing, the trial court held that the appropriate remedy for INDOT was ejectment and the petition to go forward with the preliminary injunction was denied. Gas City remains in possession of the service stations under a bond posted in ejectment.

Various other pleadings have been filed, including INDOT's Second Amended Answer and Counterclaim adding the McEnerys as third-party defendants. INDOT's Second Amended Counterclaim alleged that the McEnerys have been a part of the continuing operation of the service plazas after the effective date of termination had passed. Thus, INDOT claims that they have aided and encouraged the wrongful detention of the Toll Road service stations. Furthermore, INDOT asserts that the wrongful detention of real estate is tortious and that corporate officers who facilitate that activity by the corporation are personally liable for the resulting damage.

The McEnerys filed a Motion for Judgment on the Pleadings, or Alternatively, Motion for Summary Judgment, claiming that they have acted within the scope of their employment and cannot be held personally liable. In his capacity as President of Gas City, William J. McEnery has facilitated the continued operation of the Toll Road stations by authorizing and directing agents and employees of Gas City to continue to comply with the agreement during the pendency of this action. Len McEnery has continued with his responsibility as General Manager of Retail Operations overseeing all aspects of the Toll Road stations and seeing to their proper and continuous operation.

The trial court granted the McEnerys' Motion for Summary Judgment holding that nothing in the evidentiary materials suggested that the McEnerys acted outside the scope of their authority as officers and employees of Gas City or that their actions were those of individuals acting for solely personal advantage. This appeal followed.

## DISCUSSION AND DECISION

### Standard of Review

In *Jarboe v. Landmark Community Newspapers of Indiana, Inc.,* 625 N.E.2d 1291, 1294 (Ind.Ct.App.1993), this court held that when reviewing the propriety of a grant of summary judgment, we apply the same standard applicable to the trial court. Summary judgment is proper only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). In determining whether a genuine issue of material fact exists, we accept as true all facts alleged by the nonmoving party, consider the pleadings and evidence sanctioned by T.R. 56(C) and designated to the court (without determin-

ing weight or credibility), construe all evidence in favor of the nonmoving party, and resolve all doubts as to the existence of a material issue against the moving party. *Jarboe,* 625 N.E.2d at 1294.

*Personal Liability of Corporate Officers*

■ INDOT appeals the trial court's grant of summary judgment in favor of the McEnerys. INDOT claims that the wrongful detention of real estate is tortious and that the McEnerys have aided, encouraged, and facilitated the wrongful detention of the service plazas by Gas City. Based on its claim of wrongful detention of real estate in tort, INDOT asserts that the McEnerys are personally liable. It is true that an action to recover real estate and to recoup damages for its detention "is an action sounding in tort..." *Dorrell v. Hannah,* 80 Ind. 497 (1881). It is also true that an agent who commits a tortious act is equally liable with the principal. *Howard Dodge & Sons, Inc. v. Finn,* 181 Ind.App. 209, 391 N.E.2d 638, 641 (1979). The agent cannot escape liability on the ground that he acted for a principal. *Id.* Consequently, an agent who wrongfully detains the goods of another for his principal is personally liable. *Id.*

■ The McEnerys maintain that INDOT has not offered any facts or case law showing that the McEnerys have wrongfully detained real estate. The McEnerys claim that their part in overseeing the continuous and proper operation of the service stations is not wrongful. The service stations are operating under an agreement that does not end until 2005. INDOT has never alleged that Gas City has failed to make its lease payments. This court agrees with INDOT that the fact that Gas City has sought a declaratory judgment, and remains in possession under a bond posted in ejectment does not render Gas City's possession rightful. However, INDOT has not shown that either of the McEnerys have personally physically detained the real estate or that

they have ordered any employee to detain the real estate.

■ The McEnerys further assert that the case law INDOT relies on to hold a corporate officer personally liable does not apply to the facts of the present case. The cases correctly state that corporate officers may be held personally liable if they commit a tortious act. Nonetheless, these cases can be distinguished. In *American Independent Management Systems, Inc. v. McDaniel,* 443 N.E.2d 98 (Ind.Ct.App. 1982), the agent of the corporation personally participated in fraud. In *Roake v. Christensen,* 528 N.E.2d 789 (Ind.Ct.App. 1988), the corporate officer personally participated in criminal conversion. Finally, in *Howard Dodge & Sons, Inc.,* 181 Ind. App. 209, 391 N.E.2d 638, the agent personally converted and removed personal property. These cases do not follow the facts that we have in the present case. Additionally, in each of these cases, the agent of the corporation personally committed the alleged tort. INDOT has not shown that the McEnerys, by continuing to do the every day tasks that their jobs require, have wrongfully detained real estate.

■ The McEnerys claim that INDOT has essentially disguised a breach of contract claim in its wrongful detention of real estate claim; and the McEnerys assert that under a breach of contract claim, they cannot be held personally liable. In *Winkler v. V.G. Reed & Sons, Inc.,* 638 N.E.2d 1228, 1231 (Ind.1994), our supreme court held that the personal liability of corporate officers and shareholders is determined by common law rules of agency. It is a matter of black-letter law that where the agent acted within the scope of the agent's authority in signing a contract on behalf of the principal, the remedy of one seeking to enforce the contract is against the principal and not the agent. *Id.* In addition, an officer or director of a corporation will not be held personally liable for inducing the corporation's breach of

its contract if the officer or director's action is within the scope of his official duties on behalf of the corporation. *Martin v. Platt*, 179 Ind.App. 688, 386 N.E.2d 1026, 1027 (1979). As a result, corporate officers and shareholders are generally not personally liable for the contractual obligations of the corporation. *Winkler*, 638 N.E.2d at 1231.

■■■■■ These rules are derived from the fact that a corporation is a legal entity separate and distinct from its shareholders and officers. *Id.* at 1231–1232. This has been so since the earliest days of our corporate law. *Id.* at 1232. Although a corporation acts only through its agents, officers, shareholders, and employees, it is the corporate entity that is legally responsible for those acts. *Id.*

INDOT asserts that it does not rely on a breach of contract theory. Rather, INDOT maintains that it relies on the theory that since Gas City materially breached the written agreement and was ordered to vacate, the contract no longer provides justification for its continued operation of the service stations. However, INDOT's claim against the McEnerys is the direct result of a disagreement over terms of the written agreement between itself and Gas City. In pertinent part, paragraph 27 of the agreement between INDOT and Gas City states as follows:

### TRANSITION OF SERVICE

The OPERATOR shall, in the event a new operator assumes responsibility for the operation of the facilities on or before the expiration date of this Lease Agreement, and for any reason whatsoever, cooperate fully with the new operator to achieve an orderly transition of service without interruption of such services to the Toll Road patron...

At most, the McEnerys have participated in the decision not to "transition" the operation of the service stations.

We agree with the McEnerys' assertion that INDOT is essentially alleging that Gas City and its employees have failed to comply with its contractual obligation to "transition" operations. Thus, this is a breach of contract claim. As previously stated, corporate officers and shareholders are generally not personally liable for the contractual obligations of the corporation. *Winkler*, 638 N.E.2d at 1231.

Finally, this court agrees with the trial court's ruling that there are no genuine issues of material fact in dispute; and the case law does not support INDOT's attempt to hold corporate officers, namely the McEnerys, independently personally liable when the officers' actions are within the scope of their official duties on behalf of the corporation.

### CONCLUSION

Based on the foregoing, we conclude that trial court did not err in entering summary judgment in favor of the McEnerys.

We affirm.

BARNES, J., and BAILEY, J., concur.